25CA1000 Peo in Interest of Jordan 09-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1000
Pueblo County District Court No. 25MH30116
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Charles Arthur Thomas Jordan,

Respondent-Appellant.

---

ORDER AFFIRMED

Division A
Opinion by JUDGE BERGER*
Román, C.J., and Bernard*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Charles Arthur Thomas Jordan appeals the district court's order authorizing the involuntary administration of medications. We affirm.

## I.     Background

¶ 2     Jordan was admitted to the Colorado Mental Health Hospital in Pueblo (the hospital) after being found incompetent to proceed on criminal charges. He has been diagnosed with schizoaffective disorder according to the physician responsible for Jordan's care and treatment, Dr. Martin Ahern. After an initial course of court-ordered medications, Jordan's condition significantly improved. However, in Dr. Ahern's opinion, his condition is likely to precipitously decline should he not continue on psychiatric medications. Given Jordan's history of medication refusal, deterioration, and associated physical aggression, Dr. Ahern requested another court order to administer valproic acid (Depakote) and olanzapine (Zyprexa) after the initial order expired.

¶ 3     In May 2025, the People filed a petition seeking court authorization for the requested medications. Consistent with *People v. Medina*, 705 P.2d 961 (Colo. 1985), the petition asserted that (1) Jordan is incapable of effectively participating in reasonable

decisions affecting his health and treatment; (2) the requested treatment is necessary to prevent a significant and likely long-term deterioration in his mental health condition and to prevent the likelihood of him causing serious harm to others in the institution; (3) a less intrusive treatment alternative is not available; and (4) Jordan's need for treatment is sufficiently compelling to override any bona fide and legitimate interest he has in refusing treatment.

¶ 4     After a hearing, at which both Jordan and Dr. Ahern testified, the district court granted the petition.

## II.     Discussion

¶ 5     A district court may order the involuntary administration of medication to a patient only if the People prove, by clear and convincing evidence, each of the four elements outlined in *Medina*.[1] *Id.* at 973.  Jordan doesn't contest the first, second, or third *Medina*

---

[1] We recognize that, when the purpose of administering medications is to restore competency in a criminal case, courts usually must apply the Supreme Court's test from *Sell v. United States*, 539 U.S. 166, 180-81 (2003).  However, the parties do not dispute that *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), provides the appropriate analytical framework here.  We agree, given that the purpose of the involuntary treatment was, in part, to prevent Jordan from causing serious harm to himself or others.  *See Sell*, 539 U.S. at 181-83.

elements. He contends only that the evidence presented at the hearing was insufficient to prove the fourth. We disagree.

## A. Standard of Review

¶ 6 When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we review the district court's legal conclusions de novo and defer to its factual findings if they have record support. *People v. Marquardt*, 2016 CO 4, ¶ 8. We view the evidence as a whole and in the light most favorable to the petitioning party, leaving the resolution of testimonial conflicts and the determination of witness credibility solely to the fact finder. *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57; *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. As the fact finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *R.C.*, ¶ 7.

## B. Analysis

¶ 7 The fourth *Medina* element evaluates whether the patient's need for treatment is sufficiently compelling to override any legitimate interest the patient has in refusing treatment. *Medina*, 705 P.2d at 974. In conducting this evaluation, a court determines

"whether the patient's refusal is bona fide and legitimate and, if so, whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 8    On appeal, Jordan points to Dr. Ahern's testimony outlining a list of potential side effects from Zyprexa and Depakote, asserting that "[t]he list of risks provided by Dr. Ahern is extensive and severe." He acknowledges Dr. Ahern's testimony that he has been "tolerating the medications well," but he asserts that this "does not negate the risk of side effects developing with continued exposure to the medications." He claims that he has a legitimate interest in avoiding such side effects. Further, he asserts a religious reason for refusing the medications. Specifically, when asked at the hearing if he had any personal belief that precluded him from taking pharmaceutical medications, he responded:

> Just the Christian Bible based — the book of
> Acts, you can't buy the Holy Spirit with sorcery
> money and sorcery is pharmaceuticals. So, it's
> a joint dealing and I just think the Doctor gets
> a pharmaceutical bonus from the

manufacture[r] to prescribe more medications. I think it's a waste of taxpayer's money.

¶ 9     He later elaborated that taking the medications was "against [his] religion." Asked to explain the basis of his religious objection, he said, "The Book of Acts, Sorcery in English is translated as Pharmacia in Greek, Pharmacy in Latin."

¶ 10    Though the district court did not credit Jordan's testimony about his religious objections, it accepted Jordan's stated religious beliefs and certain identified side effects — namely, eye twitching and tiredness — as bona fide and legitimate reasons for refusing medications. Nevertheless, the court determined that Jordan's prognosis without treatment is so unfavorable that his personal preference must yield to the State's interests in preserving his life and health and protecting the safety of those in the institution. Assuming, as the district court did, that all of Jordan's objections to the medication are bona fide and legitimate, we discern no error in the court's determination as to the fourth *Medina* element.

¶ 11    Dr. Ahern testified that, without the requested medications, Jordan's mental state will deteriorate and he will likely be a risk to both himself and others. In particular, Dr. Ahern opined that,

without mood stabilizing and antipsychotic medications, Jordan will experience a long-term decline in his mental condition. Although Jordan had only ceased taking his medications for three days at the time of the hearing, hospital staff had already observed him pacing the unit in the middle of the night, an early sign of deterioration that Dr. Ahern testified was a "harbinger" of, among other things, psychotic symptoms, increased delusional preoccupation, and auditory hallucinations in the days and weeks to come. Further, Dr. Ahern testified that stopping and starting medications can often lead to a decreased response to treatment, meaning that a patient's baseline functioning even on medications is diminished.

¶ 12    Likewise, although Jordan had not yet decompensated to the point of dangerousness, Dr. Ahern testified that, without medications, Jordan becomes "disorganized and delusionally preoccupied" to the point that he "make[s] threatening comments and gestures," posing a risk of harm to others. Indeed, Dr. Ahern's affidavit, which was admitted without objection at the hearing, detailed Jordan's self-reported history of suicide attempts along with evidence of self-harm and threatening behaviors toward others when unmedicated.

¶ 13    The district court credited both the contents of the exhibit and Dr. Ahern's testimony about Jordan's prognosis and likely deterioration and dangerousness.  Viewing the evidence as a whole and in the light most favorable to the petitioning party and recognizing that the determination of witness credibility rests solely with the fact finder, *Uwayezuk*, ¶ 57; *R.C.*, ¶ 7, we conclude that there is sufficient evidence to support the court's determination as to the fourth *Medina* element.

### III.    Disposition

¶ 14    The order authorizing the involuntary administration of medication is affirmed.

CHIEF JUDGE ROMÁN and JUDGE BERNARD concur.